# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:13cr37 |
| v. | : | (Judge Munley) |
| KETTLY BIEN-AIME TURNBULL,<br>    Defendant | : | |

## MEMORANDUM

Before the court for disposition is the nonjury criminal trial of Defendant Kettly Bien-Aime Turnbull (hereinafter "defendant"). (Docs. 43, 44). For the following reasons, the court will find the defendant not guilty on all counts.

**Background**

Defendant was indicted by a Grand Jury in the Eastern District of Pennsylvania on May 3, 2012.[1] (Doc. 1). Defendant was charged with two (2) counts of importing counterfeit goods in contravention of 18 U.S.C. § 545, and seven (7) counts of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a)(1). (Id.)

Defendant filed an unopposed motion to transfer venue to the Middle District of Pennsylvania, which was granted on February 22, 2013. (Doc. 7). Prior to the start of trial, the defendant filed a concurred motion for waiver of a jury trial pursuant to Federal Rule of Criminal Procedure

---

[1] The government filed a superseding indictment on January 30, 2013 stating that count one occurred at Dulles International Airport, not Reagan National Airport. (Doc. 17).

23(a)(1)-(3). (Doc. 32). The court approved defendant's waiver (Doc. 33) and conducted a nonjury trial on November 7-8, 2013 (Docs. 43, 44).

At trial, both parties were represented by counsel who presented and argued the issues skillfully and effectively. The government presented seven (7) witnesses: United States Department of Homeland Security (hereinafter "DHS") agent Louise Kennedy; United States Customs and Border Protection (hereinafter "CBP") Officer Michael McKoy; CBP Officer Mary Steinlauf; CBP Officer John Grannis; Jessica Haugen, a legal coordinator with Gucci America, Inc.; and Melissa Roth, director of brand protection for Burberry, Ltd. James McCully was the defendant's sole witness.

At the trial's conclusion, the court directed the parties to submit proposed findings of fact and conclusions of law with citations to the record. (Docs. 45, 46). Having received the parties post-trial submissions, the matter is ripe for disposition.

**Legal Standard**

In a nonjury trial, the trial judge is the finder of fact and must find the defendant guilty or not guilty. FED. R. CRIM P. 23(c). For the court to find the defendant guilty of the offenses charged, the government must convince the court that the defendant is guilty beyond a reasonable doubt. THIRD CIRCUIT MODEL JURY INSTRUCTIONS 3.06 (2012). This means that the government must establish each and every element of the offense

charged beyond a reasonable doubt. Id.; United States v. Caraballo-Rodriguez, 726 F.3d 418, 425 (3d Cir. 2013) (citation omitted). It may do so with direct or circumstantial evidence. United States v. Bordie, 403 F.3d 123, 134 (3d Cir. 2005). "Circumstantial inferences drawn from the evidence must bear a 'logical or convincing connection to established fact.'" Caraballo-Rodriguez, 405 F.3d at 425 (quoting United States v. Cartwright, 359 F.3d 281, 291 (3d Cir. 2004)). "A defendant may not be convicted based on suspicion or conjecture, but only on evidence proving guilt beyond a reasonable doubt." THIRD CIRCUIT MODEL JURY INSTRUCTIONS 3.06 (2012). The Third Circuit Model Jury Instructions further provide that:

> Proof beyond a reasonable doubt does not mean proof beyond all possible doubt or to a mathematical certainty. Possible doubts or doubts based on conjecture, speculation, or hunch are not reasonable doubts. A reasonable doubt is a fair doubt based on reason, logic, common sense, or experience. It is a doubt that an ordinary reasonable person has after carefully weighing all of the evidence, and is a doubt of the sort that would cause him or her to hesitate to act in matters of importance in his or her own life. It may arise from the evidence, or from the lack of evidence, or from the nature of the evidence.
> If, having heard all the evidence, the court is convinced that the government proved each and every element of the offense charged beyond a reasonable doubt, [the court should find the defendant] guilty for that offense. However, if [the court has] a reasonable doubt about one or more of the elements of the offense charged, the [the court] must [find the defendant] not guilty of that offense.

Id.

**Findings of Fact**[2]

Recorded and issued here, pursuant to Federal Rule of Criminal Procedure 23(c), are the relevant and material facts found specifically from the record beyond a reasonable doubt.

**A. Defendant's return from China on October 25, 2010**

On October 25, 2010, the defendant was working as a flight attendant returning from Beijing, China to Dulles International Airport. (Doc. 43, Notes of Testimony (hereinafter "N.T.") 11/7/13 at 7; Doc. 44, N.T. 11/8/13 at 45). The defendant purchased handbags in China, which she stated on her customs declaration were for personal use and had a value of $400. (Doc. 43, N.T. 11/7/13 at 46, 119-120; Doc. 44, N.T. 11/8/13 at 46-47, 62). After closer examination at customs, CBP Officer Michael McKoy determined that the defendant's handbags were "commercial merchandise for sale" with an approximate value of $3,000.[3] (Doc. 43,

---

[2] The court's findings of fact are presented in narrative form in accordance with Federal Rule of Criminal Procedure 23(c).

[3] Passengers must complete the proper customs paperwork to bring commercial goods into the United States. (Doc. 43, N.T. 11/7/13 at 117-18). This "formal entry" of commercial goods, involves obtaining an airway bill number from the airline's cargo office before bringing the items into the United States. (Id.) Here, the defendant failed to "formally enter" her handbags. As such, CBP "post-entered" her handbags, a process which allows CBP Officers to open up the defendant's luggage and examine the handbags to determine whether they are for personal or commercial use. (Id. at 118).

4

N.T. 11/7/13 at 121-24). Accordingly, Officer McKoy seized the defendant's handbags and sent them to a separate CBP department to determine whether or not the handbags were for commercial sale. (Id. at 124-26).

On October 26, 2010, the defendant returned to Dulles International Airport to reclaim her handbags. (Doc. 44, N.T. 11/8/13 at 49). The defendant provided CBP officers with receipts establishing the value of the handbags at $400. (Id. at 49-50, 76). As such, CBP officers returned all of the defendant's handbags.[4] (Id. at 50).

**B. Operation Faux Real**

In November 2010, The United States Department of Homeland Security was conducting Operation Faux Real, which was designed to identify and confiscate counterfeit goods at local flea markets. (Doc. 43, N.T. 11/7/13 at 19-20). On November 23, 2010, CBP Special Agent Kennedy went to Rice's Flea Market with two representatives from Allegiance Protection Group.[5] (Id. at 20). Special Agent Kennedy and the Allegiance representatives approached a stand operated by the defendant

---

[4] The government agrees that the defendant's handbags were never examined for authenticity at Dulles International Airport. (Doc. 46, Gov't Proposed Findings of Fact ¶ 17).

[5] Allegiance Protection Group is private investigative firm hired by Burberry to identify counterfeit Burberry products. (Doc. 43, N.T. 11/7/13 at 23-25).

5

and her partner, James McCully. (Id. at 21). The defendant and McCully were selling handbags that the defendant brought into the United States from Beijing, China on October 25, 2010. (Doc. 44, N.T. 11/8/13 at 11). An Allegiance representative purchased a handbag she deemed "counterfeit" for $40. (Doc. 43, N.T. 11/7/13 at 6, 24). The government alleges that this handbag is a counterfeit Burberry handbag.

### C. Defendant's return from China on January 13, 2011

On January 13, 2011, the defendant arrived at Chicago O'Hare International Airport on a flight from Beijing, China. (Id. at 7). The defendant declared that she was carrying $785 worth of skirts and handbags for personal use contained within four duffle bags. (Id. at 54, 139, 141). CBP Officer Mary Steinlauf reviewed the defendant's Customs Declaration form and emptied the contents of the defendant's four duffle bags onto two conveyor belts measuring ten feet long and four feet wide. (Id. 141-42). The defendant's duffle bags contained 128 handbags. (Id. at 57). Officer Steinlauf determined that the defendant was carrying a commercial amount of merchandise and informed the defendant that her handbags were being confiscated and would be shipped to a warehouse in Newark, NJ. (Id. at 141).

### D. Defendant's handbags arrive in Newark, New Jersey

CBP Officer John Grannis received 111 of the defendant's confiscated handbags in Newark, New Jersey and determined that eighty-

6

one (81) handbags were of questionable legitimacy.[6] (Id. at 152). Officer Grannis sent samples of the eighty-one handbags to a CBP import specialist to confirm whether the handbags were counterfeit or confusingly similar. (Id. at 157). CBP's import specialist determined that all eighty-one bags were counterfeit or confusingly similar to authentic Gucci and Burberry handbags. (Id.) Thus, Officer Grannis seized all eighty-one bags and sent them to Special Agent Kennedy.[7] (Id. at 13-15, 24-25, 157).

### E. Defendant's arrest on May 9, 2012

Over a year later, the defendant was arrested at her home that she shared with James McCully. (Doc. 43, N.T. 11/7/13 at 31, 74; Doc. 44, N.T. 11/8/13 at 55-56). McCully consented to a search of their house, car and a kiosk located at the Stroud Mall. (Doc. 44, N.T. 11/8/13 at 56). The government seized a number of handbags at the defendant's home and kiosk at the Stroudsburg Mall. (Doc. 43, N.T. 11/7/13 at 32, 35). While the government seized over one hundred handbags from the defendant's residence and kiosk on May 9, 2012, seventeen (17) are at issue in the instant trial. (Doc. 6, Superseding Indictment at 6-9).

---

[6] United Airlines lost one of the duffle bags containing seventeen (17) confiscated handbags in transit between Chicago and Newark.

[7] Special Agent Kennedy was assigned to the defendant's case on January 6, 2011. (Doc. 43, N.T. 11/7/13 at 57-58).

7

**F. Gucci handbags**

Jessica Haugen testified on behalf of Gucci America, Inc. (hereinafter "Gucci"). Haugen has been a Legal Coordinator at Gucci for the past eighteen (18) months. (Doc. 43, N.T. 11/7/13 at 171). Haugen's formal training in intellectual property and trademarks consists of attending a six (6) day training session at a Gucci facility in Florence, Italy. (Id. at 172).

Haugen stated that Gucci owns registered trademark 3,072,549, known as the GG repeating pattern. (Id. at 174-76). The GG repeating pattern trademark covers handbags, and Gucci has been consistently selling handbags and other merchandise bearing this trademark since March 1966 through the present day.[8] (Id. at 175-76). The GG repeating pattern is one of Gucci's best-selling patterns. (Id. at 176).

Haugen testified that in her opinion, the defendant's seized handbags were counterfeit representations of Gucci's repeating pattern. (Id. at 177-82). The defendant's handbags, like the genuine, had two round designs in the middle, dots on the outside and the pattern repeated across the entire handbag. (Id. at 181). Haugen further testified that the two marks were not identical. (Id.)

---

[8] Gucci re-registered the GG repeating pattern trademark for an additional ten years on March 28, 2006. (Doc. 43, N.T. 11/7/13 at 174-75).

8

### G. Burberry handbags

Melissa Roth, Director of Burberry Brand Protection, testified that Burberry owns and currently utilizes registered trademark numbers 2,022,789 and 2,732,617, which are Burberry check pattern trademarks. (Doc. 44, N.T. 11/8/13 at 18-21). These trademarks are used as patterns on Burberry handbags and contain the Burberry color pattern of tan, black, white and red. (Id. at 18-21, 23).

Roth testified that the defendant's handbags were counterfeit Burberry handbags. (Id. at 18-25). Roth stated that the check pattern appearing on the defendant's handbags was identical to Burberry's check pattern, however, the raw materials used to manufacture the defendant's handbags were different from the raw materials used to manufacture genuine Burberry handbags. (Id. at 22, 24-25). Therefore, the defendant's handbags were counterfeit. (Id.)

**Conclusions of Law**[9]

Defendant presents the court with two issues. First, defendant asserts that the government failed to prove beyond a reasonable doubt that the she knew she was selling allegedly counterfeit handbags. Second, the government failed to prove beyond a reasonable doubt that her handbags were in fact counterfeit. The court addresses these issues *in*

---

[9] The court's conclusions of law are presented in narrative form pursuant to Federal Rule of Criminal Procedure 23(c).

9

*seriatim*.

**A. Defendant's intent**

The United States charged the defendant with two counts under 18 U.S.C. § 545 (hereinafter "section 545").[10] For the defendant to be found guilty of this crime, the government must prove beyond a reasonable doubt that the defendant: (1) imported or brought into the United States; (2) merchandise; (3) knowing the same to have been imported contrary to law. 18 U.S.C. § 545; see United States v. Molt, 615 F.2d 141, 144 (3d Cir. 1980); see also United States v. Teh, 535 F.3d 511, 519 (6th Cir. 2008); United States v. Patel, 762 F.2d 784, 790 (9th Cir. 1985). Moreover, to prove the "contrary to law" element, the government must specify the statute violated or facts sufficient to prove violation of a particular statute.[11]

---

[10] 18 U.S.C. § 545 provides in part:

> Whoever fraudulently and knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law–
> Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 545.

[11] In the instant case, the government alleges the defendant's importation of counterfeit merchandise was contrary to customs and commerce and trade laws banning the importation of goods bearing

10

United States v. Menon, 24 F.3d 550, 558 (3d Cir. 1994).

The United States also charged the defendant with seven counts of trafficking in counterfeit goods in contravention of 18 U.S.C. § 2320(a) (hereinafter "section 2320(a)").[12] To obtain a conviction under section 2320(a), the government must establish beyond a reasonable doubt that: (1) the defendant trafficked or attempted to traffic in goods or services; (2) that she did so intentionally; (3) that the defendant used a counterfeit mark on or in connection with such goods and services; and (4) that she knew the mark was counterfeit. United States v. Xu, 599 F.3d 452, 453 (5th Cir. 2010); United States v. Giles, 213 F.3d 1247, 1249 (10th Cir. 2000).

Section 545's state of mind element requires that the defendant know the handbags have been imported contrary to law. Molt, 615 F.2d at 144. Section 2320(a)'s state of mind element is dual: the defendant must intend to traffic or attempt to traffic in goods or services **and knowingly use a counterfeit mark on or in connection with such goods or services**. Yong Wong Park v. Att'y Gen. of U.S., 472 F.3d 66, 71 (3d Cir. 2006) (emphasis added); see also United States v. Song, 934 F.2d 105, 108-09

---

counterfeit and infringing trademarks under 19 U.S.C. § 1526 and 15 U.S.C. § 1124. (Doc. 1, Indictment at 1,3).

[12] Section 2320(a) is defined in part as "whoever intentionally traffics in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services." 18 U.S.C. § 2320(a).

11

(7th Cir. 1991) (stating that the use of the conjunctive "and" preceding the term "counterfeit mark" indicates congressional intent to prosecute one who traffics in goods and who uses a counterfeit mark in connection with those goods). Thus, a common element between both statutes defendant is charged under is whether the defendant knew the handbags were counterfeit.

Here, the government failed to prove beyond a reasonable doubt that the defendant knew the handbags were counterfeit. Rather, the evidence indicates she believed the handbags were not counterfeit. First, the defendant did not hide or attempt to conceal any of the handbags from Customs and Border Patrol Officers. (Doc. 43, N.T. 11/7/13 at 57, 147); cf. United States v. Chong Lam, 677 F.3d 190, 194, 200 n.10 (4th Cir. 2012) (stating that the defendant knew his handbags were counterfeit because he concealed the counterfeit handbags inside legitimate handbags and gym bags). Second, the defendant advertised that the handbags she was selling at the flea market were "Bola" handbags. (Doc. 43, N.T. 11/7/13 at 24, 51-52; Doc. 44, N.T. 11/8/13 at 61-63). She did not advertise them in any way as Gucci or Burberry handbags. (Id.) Third, the defendant advised Special Agent Kennedy at the flea market that she "wouldn't be caught dead [selling counterfeit handbags] . . . ." (Doc. 43, N.T. 11/7/13 at 23).

Additionally, the trial evidence established that the defendant never

12

received cease and desist letters from either Gucci or Burberry. (Doc. 44, N.T. 11/8/13 at 36, 55). McCully testified that they would not have sold their handbags if they had any suggestion that they were infringing on anyone's rights.[13] (Id. at 63, 68-69). In short, the government failed to prove beyond a reasonable doubt that the defendant knew the handbags she was selling were counterfeit Gucci and Burberry handbags. Because the defendant's subjective knowledge is a common element within all crimes charged, the court will find the defendant not guilty on all counts.

**B. Whether the defendant's handbags were counterfeit**

While the court has found the defendant not guilty because she did not know that the handbags were "counterfeit," the court will briefly discuss whether the government proved beyond a reasonable doubt that the handbags were indeed counterfeit. Section 2320 defines the term "counterfeit mark" as:

> (A) a spurious mark—
>
> (i) that is used in connection with trafficking in any goods, services, . . . or packaging of any type or nature;
>
> (ii) that is identical with, or substantially indistinguishable from, a mark registered on the principal register in the United

---

[13] Having observed the witnesses and heard the testimony, the court determines that McCully was credible and places great weight on his testimony. See THIRD CIRCUIT MODEL JURY INSTRUCTIONS 3.04 (2012) (stating that [finders of fact] are the sole judges of the credibility of witnesses).

>States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered;
>
>(iii) that is applied to or used in connection with the goods or services for which the mark is registered with the United States Patent and Trademark Office . . . ; and
>
>(iv) the use of which is likely to cause confusion, to cause mistake, or to deceive

18 U.S.C. § 2320(e).[14] The parties do not dispute the first and third elements. Rather, the parties disagree that defendant's handbags were "identical with or substantially indistinguishable from" authentic Gucci and Burberry handbags. And if the defendant's handbags were identical or substantially indistinguishable, the parties dispute whether these handbags were likely to cause confusion. As such, the court will first address the issue of identical or substantially indistinguishable, and if necessary, discuss whether defendant's handbags were likely to cause confusion.

### a. Identical or substantially indistinguishable

Section 2320 defines a counterfeit mark as a "spurious mark that is identical with, or substantially indistinguishable from, a [registered trademark]." 18 U.S.C. § 2320. The parties agree that the defendant's handbags are not identical to authentic Gucci and Burberry handbags.

---

[14] The parties agree that the version of 18 U.S.C. § 2320 in effect throughout this action was the version passed on March 16, 2006. (See Doc. 36, Governments' proposed jury instructions at 20; Doc. 35, Defendant's proposed jury instructions at 21-22).

14

The issue is whether they are substantially indistinguishable.

In cases of statutory interpretation, the Third Circuit Court of Appeals has stated that "our inquiry begins with the language of the statute and focuses on Congress's intent." United States v. Berrios, 676 F.3d 118, 139, (3d Cir. 2012) (citation omitted). A court first must examine the text and give its words their ordinary meaning. Moskal v. United States, 498 U.S. 103, 108 (1990) (citations omitted); see also Kosak v. United States, 679 F.2d 306, 308 (3d Cir. 1982) (holding that "'our starting point must be the language employed by Congress'") (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 337 (1979)). Where the statutory meaning is unclear, the Court looks to the legislative history to resolve any conflict. See Cohen v. De La Cruz, 106 F.3d 52, 57-58 (3d Cir. 1997) (citing Patterson v. Shumate, 504 U.S. 753, 761 (1992)). If the statutory language is neither vague nor ambiguous, however, the inquiry begins and ends with the language of the statute itself. Ross v. Hotel Employees and Rest. Employees Int'l Union, 266 F.3d 236, 245 (3d Cir. 2001).

The ordinary meaning of "spurious," "substantial," and "indistinguishable" are neither vague nor ambiguous. Black's Law Dictionary defines "spurious" as "[d]eceptively suggesting an erroneous origin; fake." BLACK'S LAW DICTIONARY (9th ed. 2009). In ordinary usage, "substantial" means "important or essential" and "being largely but not wholly that which is specified." MERRIAM-WEBSTER'S COLLEGIATE

15

DICTIONARY 1245 (11th ed. 2003). "Indistinguishable" means "not distinguishable" or "not clearly recognizable or understandable" or "lacking identifying or individualizing qualities." Id. at 635. Thus, the statute's ordinary meaning states that a spurious mark is substantially indistinguishable from a registered trademark when the spurious mark suggests an erroneous origin and is almost impossible to distinguish from the authentic mark.

At the outset, finders of fact discerning whether a handbag is identical or substantially indistinguishable from an authentic handbag analyze, *inter alia*, the similarity of the two marks, the pattern displayed on the handbags, the shape of the boxes and size of the lines. United States v. Chong Lam, 677 F.3d at 200. Here, the Burberry check pattern trademark contains a red line that borders the interior of the mark on all four sides. (See Gov't Exs. 23.1 and 23.2). This red line is 1/3 of width of the remaining lines that comprise Burberry's check pattern mark. (Id.) The defendant's handbags, however, contain red lines that are approximately the same size or slightly more narrow than the remaining lines that make up the check pattern. (See Gov't Ex. 3.6; Def. Ex. 48). Moreover, the red lines contained within Burberry's registered mark are all the same size. (See Gov't Exs. 23.1 and 23.2). The red lines on the defendant's handbags, however, differ in size from each other. (See Gov't Ex. 3.6; Def. Ex. 48).

16

Burberry's expert, Melissa Roth, also testified that the defendant's handbags differed from Burberry handbags in several ways. (Doc. 44, N.T. 11/8/13 at 22-25, 33-35). Roth stated that the materials used to manufacture the defendant's handbags are not the materials used to manufacture Burberry handbags. (Id. at 24). Specifically, the zipper pulls, lining and metal snaps on the defendant's handbags differed from those same materials used to manufacture Burberry handbags. (Id. at 22). Burberry handbags will also display the name "Burberry" somewhere on the item. (Id. at 24, 32). Roth stated, however, that the word "Burberry" did not appear on any of the defendant's handbags. (Id. at 24). Finally, Roth testified that the stitching on the defendant's handbags was poor quality and differed from the stitching on Burberry handbags. (Id. at 24, 34). Ergo, the defendant's handbags are not substantially indistinguishable from Burberry handbags.

Additionally, the court finds that the defendant's handbags are not substantially indistinguishable from Gucci handbags. Gucci's expert, Jessica Haugen, agreed that the defendant's handbags failed to contain a repeating "GG" pattern. (Doc. 43, N.T. 11/7/13 at 185-86). Rather, the defendant's handbags contained a repeating "8" or "0" pattern. (Id.) Additionally, the little circles on Gucci's registered trademark are empty, but the little circles on the defendant's handbags are filled. (Id. at 186).

Moreover, Haugen stated that the hardware on defendant's

17

handbags was very light and poor quality. (Id. at 180). The stitching on the handle was too thin, the wrong color and falling out. (Id. at 180-81). The label on the interior of the defendant's handbags did not say "Gucci" nor contain serial numbers. (Id. at 180). Haugen also noticed that the defendant's handbags were individually wrapped in plastic. (Id. at 181). Gucci does not cover their handbags in plastic. (Id.) Rather, Gucci ships all of their handbags inside a specifically designed dust bag. (Id.) Therefore, the defendant's handbags are not substantially indistinguishable from authentic Gucci handbags.[15]

**Conclusion**

For the reasons stated above, the court finds the defendant not guilty on all counts. An appropriate order follows.

**Date: 12/20/13**             **s/ James M. Munley**
                                                           **JUDGE JAMES M. MUNLEY**
                                                           **United States District Court**

---

[15] The court will not address whether defendant's handbags were likely to cause confusion because the court has found that the defendant's handbags are not substantially indistinguishable from authentic Burberry and Gucci handbags. We do note, however, that the handbags did not contain Gucci or Burberry labeling and were not advertised as such.